### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA <br><br> v. <br><br> PETER FRATUS | CRIMINAL ACTION <br> NO. 20-00270 |

**PAPPERT, J.**                                                                                                         September 10, 2021

### MEMORANDUM

Peter Fratus is charged with one count of interstate communication of threats in violation of 18 U.S.C. § 875(c). Specifically, Fratus allegedly sent two emails to Philadelphia Police Commissioner Danielle Outlaw threatening to kill her. The Court previously granted, pursuant to Federal Rule of Evidence 404(b), the Government's motion to introduce evidence of similar communications: a voicemail left at Congresswoman Maxine Waters' office and three voicemails left at Kars 4 Kids, a Jewish charity in New Jersey. (ECF Nos. 46 and 47.) The Government now moves to admit recordings of those voicemails. (Gov't Mot. ECF No. 48.) After an evidentiary hearing and oral argument (ECF No. 59), the Court grants the Motion.

In *United States v. Starks*, the Third Circuit "recognized the risks inherent in the use of tape recordings, which are 'peculiarly susceptible of alteration, tampering, and selective editing,' and held that the Government must 'produce clear and convincing evidence of authenticity and accuracy as a foundation for the admission of such recordings.'" *United States v. Credico*, 718 F. App'x 116, 119 (3d Cir. 2017) (quoting *United States v. Starks*, 515 F.2d 112, 121 (3d Cir. 1975) (further citations omitted)). Although "it is difficult to lay down a uniform standard equally applicable to

all cases," the Third Circuit stated that it was appropriate to apply the following seven-part test to establish the admissibility of the tapes at issue in *Starks*:

> [B]efore a sound recording is admitted into evidence, a foundation must be established by showing the following facts:
>
> > (1) That the recording device was capable of taking the conversation now offered in evidence.
> >
> > (2) That the operator of the device was competent to operate the device.
> >
> > (3) That the recording is authentic and correct.
> >
> > (4) That changes, additions or deletions have not been made in the recording.
> >
> > (5) That the recording had been preserved in a manner that is shown to the court.
> >
> > (6) That the speakers are identified.
> >
> > (7) That the conversation elicited was made voluntarily and in good faith, without any kind of inducement.

515 F.2d at 121 n.11 (quoting *United States v. McKeever*, 169 F. Supp. 426, 430 (S.D.N.Y. 1958)).

The Federal Rules of Evidence, adopted after *Starks*, include a less rigid authentication standard. Federal Rule of Evidence 901(a) provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed. R. Evid. 901(a). "It is unclear whether *Starks* remains relevant . . . ." *United States v. Tahn Le*, 542 F. App'x 108, 117 n.8 (3d Cir. 2013); *see also United States v. Savage*, No. 07-550-03, 2013 WL 420334, at *2 n.5 (E.D.

Pa. Feb. 4, 2013) ("There has been uncertainty as to whether Congress' adoption of the Federal Rules of Evidence and, specifically Rule 901, abrogated *Starks*.").

The Third Circuit has not definitively answered the question of whether Rule 901 abrogated *Starks* and continues to reference the *Starks* factors when considering the admissibility of audio recordings. *See, e.g., Flood v. Schaefer*, 754 F. App'x 130, 133 (3d Cir. 2018). Since Rule 901, courts within the Third Circuit "generally apply the *Starks* factors to determine the authenticity of a tape recording and use a preponderance of the evidence standard to identify a speaker on the recording." *United States v. Davis*, No. 18-270, 2018 WL 6524240, at *8 (E.D. Pa. Dec. 12, 2018) (citations omitted).

In addition, the Federal Rules of Evidence provide that certain evidence is self-authenticating. Under Rule 902(11), a record of a regularly conducted activity that satisfies Rule 803(6)(A–C) may be authenticated by the certification of a custodian or other qualified person as long as the party offering the evidence provides reasonable written notice of their intent to do so and makes the records available for inspection. Records "generated by an electronic process or system that produces an accurate result" may be authenticated in the same manner. Fed. R. Evid. 902(13).

## II.

### A.

During the hearing, the Government introduced three exhibits into evidence: (1) a certification from Terry Nicholson, a receptionist for Congresswoman Waters, attesting to the authenticity of the recording of the voicemail left at the office, (2) a similar certification from Joshua Plopper, Kars 4 Kids' IT Technician, attesting to the

authenticity of the recordings of the voicemails left for the charity and (3) an email forwarded by Ms. Nicholson to the United States Capitol Police with an attached audio file of the voicemail to Congresswoman Waters. Joshua Hubiak, an FBI Special Agent specializing in cyber and national security cases, also testified. Special Agent Hubiak previously worked as a software engineer and database administrator (Hr'g Tr. 52:20–23). The Court credits his testimony.

B.

Fratus contends that the Government failed to demonstrate the authenticity of the voicemail recordings because it did not produce "specific evidence" about the voicemail systems, the identity and capacity of its operators, or the accuracy of the recordings. (Fratus Opp'n, ECF No. 52 at 3.) But Nicholson and Plopper both certified that they were familiar with the voicemail systems of their respective employers, and that the recordings were accurate copies of the original records. Rule 902 does not "require the custodian to explain in detail who compiled the records, how, or how she knows they are accurate." *United States v. Heatherly*, 985 F.3d 254, 270 (3d Cir. 2021).

The certifications are sufficient to authenticate the recordings under either 902(11) or 902(13). Both Nicholson and Plopper certified under penalty of perjury that the recordings were made at or near the time the voicemails were received, and were kept in the ordinary course of their employers' normal business activities. They also certified that the records were generated by a reliable electronic process. *Id.* This, combined with the Government's advance notice of its intent to offer the recordings (Gov't Mot.), meets the requirements of both 902(11) and 902(13).

4

Fratus also argues that the government failed to sufficiently establish the recordings' chain of custody. (Fratus Opp'n at 3.) But the government need not establish a "'complete and exclusive' chain of custody" to authenticate the recordings. *United States v. Rawlins*, 606 F.3d 73, 82 (3d Cir. 2010) (quoting *United States v. De Larosa*, 450 F.2d 1057, 1068 (3d Cir. 1971)). Instead, there need only be "a reasonable probability that the evidence has not been altered in any material respect." *United States v. Jackson*, 649 F.2d 967, 973 (3d Cir. 1981) (quoting *United States v. Luna*, 585 F.2d 1, 6 (1st Cir. 1978)). Nicholson and Plopper both certified that the recordings at issue were accurate copies of the original voicemails. The government has shown a reasonable probability that the evidence has not been altered. *See United States v. Credico*, 718 F. App'x 116, 120–21 (3d Cir. 2017).

Finally, Fratus claims that the government failed to identify him as the speaker in the recordings. (Fratus Opp'n at 3.) "[I]t is well settled that telephone calls may be authenticated by circumstantial evidence as well as by direct recognition of the person calling." *United States v. Alper*, 449 F.2d 1223, 1229 (3d Cir. 1971). For recordings to be admitted, the Government is not required to show that an authenticating witness was familiar with a defendant's voice *prior to* the recording which is the subject of the identification. Evidence satisfying the Rule 901 authentication requirement includes "[a]n opinion identifying a person's voice — whether heard firsthand or through mechanical or electronic transmission or recording — based on hearing the voice *at any time* under circumstances that connect it with the alleged speaker." Fed. R. Evid. 901(b)(5) (emphasis added); *see also* Fed. R. Evid. 901 Advisory Committee's Notes, Example (5) ("the requisite familiarity may be acquired either before *or after* the

5

particular speaking which is the subject of the identification") (emphasis added));
*United States v. Watson*, 594 F.2d 1330, 1335 (10th Cir. 1979) (holding that an agent was not prevented from authenticating the defendant's voice on a tape introduced at trial where the agent "did not speak with [the defendant] until after the date of the telephone intercept").

A reasonable jury could conclude that Fratus is the speaker on the recordings. Special Agent Hubiak testified that the telephone number linked to the voicemails left with Kars 4 Kids was "the same phone number that left the voicemails for Ms. Waters." (Hr'g. Tr. 56:16–17.) Fratus does not dispute that he had access to and used that number. (Fratus Opp'n at 3; Hr'g Tr. 77:24 – 78:20). Special Agent Hubiak also heard Fratus speak on multiple occasions, including at his suppression hearing. (Hr'g Tr. 67:15–16.) Based on his interactions with Fratus, Hubiak testified that his voice was consistent with the voice on the recordings. (*Id.* at 71:13–18; 56:18–57:4.) He also explained that the speaker on the recordings used similar phrases to those employed in the emails to Commissioner Outlaw. (*Id.* at 57:5–9). Finally, the Government proffered that it will present additional evidence at trial linking Fratus to the voicemails. (Gov't Mot. at 4.) The jury may give such evidence whatever weight it deems proper. *See United States v. Browne*, 834 F.3d 403, 410 (3d Cir. 2016) ("Authentication does not conclusively establish the genuineness of an item; it is a foundation that a jury may reject.") (quoting *United States v. Khorozian*, 333 F.3d 498, 506 (3d Cir. 2003)).

The testimony and certifications are sufficient to satisfy both the authentication requirements of the Federal Rules of Evidence and *Starks*. Fratus does not claim that the recordings were coerced or made in bad faith. Special Agent Hubiak's testimony

and Fratus' undisputed use of the phone that made the calls adequately identify Fratus as the speaker on the voicemails. Nicholson and Plopper's certifications establish that the voicemail systems at Kars 4 Kids and Congresswoman Waters' office were capable of recording the voicemails, that the system was operated competently, that the recording is authentic, and that the voicemails have been preserved without alteration. The Government may introduce the audio recordings at trial.

    An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.
